Maradean BARCUME, Chari Bortner, Barbara Burnett, Ann Drennan, Lee Ann Gasper, Connie Martin, Maureen McIntyre, Dawn Skidmore, Jacqueline Sova, Kristine Surdu, Ann Talt–Harris, Debra Williams, and Michelle Marshke, Plaintiffs,

v.

The CITY OF FLINT, a municipal corporation, and the Flint Police Officers Association, a labor union, Defendants.

Civ. A. No. 84–CV–8066–FL.

United States District Court,
E.D. Michigan, S.D.,
at Flint.

April 8, 1993.

Susan Winshall, Winshall, Radner & Curhan, Southfield, MI, for plaintiffs.

Donna R. Nuyen, Keller, Thoma, Schwarze, Schwarze, DuBay & Katz, P.C., Detroit, MI, Timothy Bograkos, City Atty.,

Flint, MI, Bernard Feldman, Troy, MI, for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Before the Court is defendant City of Flint's ("City") motion for summary judgment (D.E. # 305), plaintiffs' response, and defendant City's reply. For the reasons that follow, defendant's motion is GRANTED IN PART and DENIED IN PART.

This civil rights action arises out of the alleged discriminatory hiring and promotion practices of the City of Flint and alleged discriminatory employment practices and sexually hostile working environment within the Flint Police Department ("FPD"). The thirteen plaintiffs are all female law enforcement officers employed by, or previously employed by, the FPD. This case is not a class action lawsuit, but rather consists of thirteen separate plaintiffs alleging personal discrimination and harassment at the hands of fellow male police officers, supervisory personnel, the FPD and its command staff, and the City of Flint through its alleged policy and practice of discrimination and tacit approval of the harassment that allegedly exists within the FPD.

Plaintiffs filed their original complaint on January 30, 1984. In that complaint, plaintiffs made various claims against both the City of Flint and the Flint Police Officers Association ("FPOA"). The original complaint consisted of five counts: (I) a claim of discrimination in hiring and promotion practices in violation of 42 U.S.C. § 1983 against defendant City; (II) a claim for violation of the duty of fair representation against defendant FPOA; (III) a claim of conspiracy to deprive plaintiffs of their civil rights in violation of 42 U.S.C. § 1985(3) against both defendants; (IV) a claim of discrimination in hiring and promotion practices and in terms, conditions and privileges of employment in violation of the Elliott–Larsen Civil Rights Act against defendant City; and (V) a claim against defendant FPOA for violation of the Elliott–Larsen Civil Rights Act.

On December 4, 1985, after extensive discovery had already taken place, plaintiffs moved the Court for leave to file a Second Amended Complaint. A hearing on this motion was held on June 23, 1986 (see Transcript of hearing on Motion for Leave to Amend Complaint (D.E. # 135)). At that hearing, the Court granted plaintiffs' motion to file an amended complaint, provided that the amended pleading separated plaintiffs' claims regarding the constitutionality of defendant City's Affirmative Action Plan ("AAP") from those alleging "traditional" or "garden variety" discrimination on the basis of sex. *Id.* at 26. The Court indicated that the AAP's exclusion of women may be evidence relevant to a classic discrimination claim, but that the determination regarding the constitutionality of the AAP is a separate claim to be filed as a separate count. *Id.* As noted in the Court's Memorandum Opinion and Order of January 26, 1987, leave for plaintiffs to amend their complaint had been granted at the June 23, 1986 hearing. Nevertheless, it was not until February 26, 1987 that plaintiffs filed their Second Amended Complaint and Jury Demand. The Second Amended Complaint contains six counts, two of which still remain to be adjudicated as to defendant City: count II, a claim pursuant to 42 U.S.C. § 1983 that defendant City violated plaintiffs' rights to equal protection in the terms and conditions of employment; and count VI, a claim that defendant City violated plaintiffs' rights secured by the Elliott–Larsen Civil Rights Act in the terms and conditions of employment.[1] Through their motion, defendant City seeks summary judgment to dismiss or limit plaintiffs' claims under counts II and VI.

---

1. Count I was a § 1983 claim challenging the constitutionality of the AAP for its failure to include women in its remedial provisions. The Court granted summary judgment to defendants on count I, upholding the constitutionality of the AAP. Count IV of the Second Amended Complaint was a claim against defendants City and FPOA alleging conspiracy to deprive plaintiffs of their civil rights through implementation of the AAP to the exclusion of women. Because this Court has upheld the constitutionality of the AAP, plaintiffs concede that count IV is also effectively dismissed. Thus, the Court will not address defendant City's motion as it relates to count IV.

## I. *Factual Background*

The specific facts alleged by plaintiffs shall be addressed as necessary in context of discussion regarding defendant City's motion. Defendant City's arguments shall be addressed seriatim.

## II. *Statute of Limitations*

Defendant's first argument is that plaintiffs' claims of alleged discriminatory conduct occurring before February 26, 1984 are barred by the statute of limitations. Plaintiffs do not dispute that the statute of limitations for both 42 U.S.C. § 1983 and the Elliott–Larsen Civil Rights Act ("Elliott–Larsen"), M.C.L. § 37.2101 *et seq.*, is three years. *Conlin v. Blanchard,* 890 F.2d 811 (6th Cir.1989); *Browning v. Pendleton,* 869 F.2d 989 (6th Cir.1989). Thus, argues defendant City, to the extent that plaintiffs' claims are based upon conduct and events occurring more than three years before the filing of the Second Amended Complaint, these claims are time-barred. Of course, defendant City's position presumes that plaintiffs' Second Amended Complaint neither relates back to plaintiffs' original complaint, filed January 30, 1984, nor alleges a continuing violation that would allow plaintiffs to recover damages for the entire period of the continuing illegal conduct.

### A. *Relation Back*

 Federal Rule of Civil Procedure 15(c) provides in relevant part that:

An amendment of a pleading relates back to the date of the original pleading when ... the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading....

Fed.R.Civ.P. 15(c)(2). The effect of this rule is that

·once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading.

Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1496 (1990) at 64.

The rationale behind Rule 15(c) is to allow an amendment to relate back to the filing of the original complaint where the defendant has been put on notice, through the pleadings or from other sources, of the entire scope of the transaction or occurrence out of which the amended claims arise. *See id.* at § 1497. Thus,

amendments that merely correct technical deficiencies or expand or modify the facts alleged in the earlier pleading meet the Rule 15(c) test and will relate back.... [A]mendments that do no more than restate the original claim with greater particularity or amplify the details of the transaction alleged in the preceding pleading fall within Rule 15(c). But, if the alteration of the original statement is so substantial that it cannot be said that defendant [sic] was given adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim or defense, then the amendment will not relate back and will be time barred if the limitations period has expired.

*Id.* at § 1497 pp. 74–79; *see also Tiller v. Atlantic Coast Line R.R. Co.,* 323 U.S. 574, 581, 65 S.Ct. 421, 424, 89 L.Ed. 465 (1945); *Boddy v. Dean,* 821 F.2d 346, 351 (6th Cir. 1987) (amendment that alleges added events leading up to same injury may relate back). Furthermore, that the amendment changes the legal theory upon which the action initially was brought will not automatically bar relation back. *Id.* at § 1497 p. 94. Thus,

[t]he fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's [sic] attention by the original pleading.

*Id.* at § 1497 pp. 94–95; *see also Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479, 484 (6th Cir.1973) (added theory of liability for same occurrence may relate back). An amendment will not relate back, however, if it asserts a new claim for relief based on different facts than set forth in the original complaint. *Koon v. Lakeshore Contractors,* 128 F.R.D. 650, 653 (W.D.Mich.1988).

In their response brief, plaintiffs argue that defendant City was not surprised by plaintiffs' allegations made in the Second Amended Complaint. Plaintiffs' response brief at 23. Plaintiffs argue that the original complaint gave defendant City ample notice that plaintiffs were suffering from continuing sexual discrimination in a variety of forms by the FPD and its agents. *Id.* At the very least, argue plaintiffs, the allegations of the Second Amended Complaint were an "attempt" to raise claims of sex discrimination which merely were particularized from the more broad allegations of the original complaint. *Id.* Plaintiffs further argue that, apart from the notice provided by the original complaint, defendant City became aware through its deposition of plaintiffs in 1984 and 1985 "that plaintiffs' exclusion from the AAP was but one act in a long line of discriminatory events." *Id.* Because defendant City, through discovery, knew of the sexually discriminatory and hostile work environment at the FPD, plaintiffs assert that their sexual discrimination and sexual harassment claims relate back to the filing of the original complaint. *Id.* at 24.

Defendant City argues in its motion that the Second Amended Complaint does not relate back to the original complaint. Defendant City argues that the original complaint only presented a challenge to the validity of the AAP, adopted and implemented in 1984, which excluded women from its definition of minorities to receive the benefits of affirmative action. Defendant City's motion brief at 9. Defendant City asserts that any mention of sexually discriminatory practices was limited to creating an historical perspective upon which to justify the necessity for the inclusion of women in the AAP. *Id.* No specific persons were identified in the complaint as perpetrators of sexual discrimination. Rather, plaintiffs discussed generally the historical hiring practices of the FPD and the concomitant effect this had on promotional opportunities for women. *Id.* Conversely, argues defendant City, the Second Amended Complaint alleges different causes of action based upon vastly different facts not pleaded in the original complaint. *Id.* Defendant City asserts that the Second Amended Complaint implicates an entirely new set of actors

who allegedly engaged in inappropriate conduct independent of that alleged in the original complaint. *Id.* Finally, defendant City argues that the original complaint did not provide notice of the subsequently filed claims of sexual discrimination and sexual harassment; in fact, plaintiffs will need to introduce entirely different evidence to establish their claims set forth in the Second Amended Complaint as opposed to that required to support their claims in the original complaint. *Id.* at 9–10.

In support of their position, plaintiffs cite several cases as authority that claims based upon new legal theories may relate back to the original pleading where the facts upon which they are derived were included in the original complaint, or are similar and related to the facts set forth originally. *See Maty v. Grasselli Co.,* 303 U.S. 197, 58 S.Ct. 507, 82 L.Ed. 745 (1938); *Boddy v. Dean,* 821 F.2d 346 (6th Cir.1987); *Carter v. Delta Air Lines, Inc.,* 441 F.Supp. 808 (S.D.N.Y.1977); *Baruah v. Young,* 536 F.Supp. 356 (D.Md.1982). Thus, the question before the Court regarding this issue is whether the claims raised in plaintiffs' Second Amended Complaint constitute different legal theories, and whether these claims arise out of the same or related occurrences or transactions as those pleaded in the original complaint.

■ A review of the original complaint, filed on January 30, 1984, reveals absolutely no claims of sexual harassment. Moreover, the entire complaint, consisting of eighty-four paragraphs, is devoid of any reference to conduct that could be interpreted as sexual harassment by the most reasonably prudent defense attorney. The original complaint also fails to allege a single incident of harassment or any other discrimination attributable to any individual person acting as an agent of the City of Flint. The original complaint does, however, make claims of discrimination in hiring and promotion of women in violation of their civil rights secured by 42 U.S.C. § 1983 (count I) and the Elliott–Larsen Civil Rights Act (count IV).

Plaintiffs' Second Amended Complaint, filed February 26, 1987, states much broader claims under § 1983 and Elliott–Larsen.

Not only do counts II and VI allege discrimination in hiring and promotional practices of defendant City, they further allege claims of disparate treatment and harassment that were not included in the original pleading. Most notably, both counts II and VI allege that defendant City condones and ratifies sexual harassment toward women in the workplace, and that defendant City has done so with knowledge or notice of the sexually hostile environment. These claims with regard to sexual harassment and hostile work environment are new to the Second Amended Complaint. There was not an inkling of factual support for such claims in the original complaint. Therefore, defendant City did not have notice that plaintiffs were pursuing that particular type of discrimination claim in this lawsuit.

Plaintiffs' original complaint alleges a violation of 42 U.S.C. § 1983 by defendant City for traditional and historical discrimination against women in hiring police officers. This historical discrimination, it is alleged, has adversely impacted women in the promotion to sergeant. The AAP's failure to include women allegedly acts to perpetuate the past discrimination against women in the FPD.

To the extent that count II of the Second Amended Complaint alleges discrimination in hiring and promotion practices, and disparate impact upon present opportunities for promotion of women to the rank of sergeant, plaintiffs' claims relate back to the original complaint for statute of limitations purposes. To the extent, however, that plaintiffs' claims under count II allege disparate treatment based upon sex, sexual harassment, and the existence of a hostile work environment within the FPD, plaintiffs' claims do not relate back to the original complaint.

■ The same is true with regard to count VI of the Second Amended Complaint. Although count IV of the original complaint stated a claim of discrimination against plaintiffs in the terms and conditions of employment, there was no notice to defendant City that this claim was for any violation other than discrimination in hiring and promotion practices, and in the exclusion of women from the relief prescribed by the AAP. No facts were alleged that would support, or

that would indicate an attempt to support, a sexual harassment claim. Plaintiffs' view that defendant City was on notice from defendants' depositions of plaintiffs in 1984 and 1985 is rejected. Plaintiffs had ample opportunity to amend the complaint to state the expanded scope of their Elliott–Larsen and § 1983 claims—to include sexual harassment—or to notify defendant City directly that such claims were being pursued. As a result of the filing of plaintiffs' Second Amended Complaint, defendant City was required to engage extensively in further discovery, including redeposition of the thirteen plaintiffs. This would not have been the case had defendant City been made aware of the sexual harassment claim. Therefore, the Court finds that defendant City did not have notice of the added claims.

Plaintiffs' position that the Second Amended Complaint merely particularized allegations made or attempted to be raised in the original pleadings also is rejected. As stated previously, there is no indication from the original complaint that plaintiff was making a claim of sexual harassment. Therefore, to the extent that count VI alleges that defendant City discriminated against plaintiffs in hiring and promotional practices, plaintiffs' claim relates back to the original pleading. Plaintiffs' claims of sexual harassment and disparate treatment in terms and conditions of employment, other than in hiring or promotional decisions, do not relate back and, unless they constitute a continuing violation as discussed below, they are barred by the statute of limitations for those incidents occurring more than three years prior to the filing of the Second Amended Complaint.

### B. *Continuing Violation*

In addition to their argument that the claims raised in the Second Amended Complaint relate back to the time of filing of the original complaint, plaintiffs argue that the discrimination and harassment allegedly imposed upon them by defendant City and its agents constitutes a continuing violation for which recovery of damages is not barred by the statute of limitations. Because the Court has already held that plaintiffs' claims for discrimination in hiring and promotional practices of defendant City relate back to the

original complaint, the Court will address only whether plaintiffs' claims of sexual harassment and disparate treatment discrimination constitute continuing violations.[2]

 Following the briefing and argument on defendant City's motion, the Sixth Circuit Court of Appeals issued an opinion addressing further the doctrine of continuing violation as applied in this circuit. *See Haithcock v. Frank,* 958 F.2d 671 (6th Cir. 1992). As articulated by the Supreme Court in *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), the doctrine of continuing violation holds that "discriminatory incidents which occur beyond the limitations period are actionable 'where a plaintiff ... challenges not just one incident of [unlawful] conduct ... but an unlawful practice that continues into the limitations period, [in such cases] the complaint is timely when it is filed within' " the limitations period regarding " 'the last asserted occurrence of that practice.' " *Haithcock,* 958 F.2d at 677 (quoting *Havens,* 455 U.S. 363, 102 S.Ct. 1114, *cited in Hull v. Cuyahoga Valley Bd. of Educ.,* 926 F.2d 505, 510–11 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991)). The effect of this doctrine is that a properly alleged continuing violation would excuse an untimely filing with regard to particular instances of allegedly discriminatory conduct which were part of the continuing violation but occurred outside the limitations period.

 In *Haithcock,* the Court of Appeals instructed that continuing violations must be viewed "as falling into two categories of 'narrowly limited exceptions' to the usual rule that 'statutes of limitations ... are triggered at the time the alleged discriminatory act occurred.' " 958 F.2d at 677–78 (quoting *Dixon v. Anderson,* 928 F.2d 212, 216 (6th Cir.1991); *E.E.O.C. v. Penton Industrial Pub. Co.,* 851 F.2d 835, 837–38 (6th Cir. 1988)). "The first category of continuing vio-

lations arise[s] 'where there is some evidence of *present* discriminatory activity giving rise to a claim of continuing violation; that is, where an employer continues presently to impose disparate work assignments or pay rates between similarly situated employee groups.' " *Haithcock,* 958 F.2d at 678 (quoting *Dixon,* 928 F.2d at 216 (emphasis in original)). " 'The rationale underlying this category is that the employer commits an illegal act ... *each time* the employer' " engages in the discriminatory conduct. *Id.* (emphasis in original). In *Dixon,* the court emphasized that "this category requires a 'current' as well as 'continuing' violation: at least one of the forbidden discriminatory acts must have occurred within the relevant limitations period. Thus limitations periods begin to run in response to discriminatory *acts* themselves, not in response to the continuing *effects* of past discriminatory acts." 928 F.2d at 216 (citation omitted), *citing Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980); *United Airlines v. Evans,* 431 U.S. 553, 557, 97 S.Ct. 1885, 1888, 52 L.Ed.2d 571 (1977).

The second category of the continuing violation theory

> arises where there has occurred "a long-standing and demonstrable policy of discrimination." *Penton,* 851 F.2d at 838. Unrelated incidents of discrimination will not suffice to invoke this exception; rather, there must be a continuing "over-arching policy of discrimination." *Janikowski v. Bendix Corp.,* 823 F.2d 945, 948 (6th Cir. 1987). Generally, "[r]epeated requests for further relief from a prior act of discrimination will not set the time limitations running anew." *Id.* at 949. However, where there has been a long-standing policy of discrimination, *repeated* attempts to gain employment or promotions may *each* trigger the running of a new limitations period. *Roberts v. North American Rock-*

---

**2.** Although it may become an issue at some later point, whether plaintiffs' claims for discrimination in hiring and promotional practices constitute a continuing violation has not been addressed by the parties in relation to the original complaint. The issue of continuing violation is only discussed by the parties with respect to whether plaintiffs' claims for alleged discrimina-

tory acts occurring prior to 1984 are barred by the statute of limitations. As the Court has found certain of these claims to relate back to the filing of the original complaint, defendant City's motion to limit these claims to events occurring after 1984 is denied and the Court need not consider whether plaintiffs' allegations constitute a continuing violation.

*well Corp.,* 650 F.2d 823, 827 (6th Cir. 1981).

*Dixon* 928 F.2d at 217. Thus, "there must be a specific allegedly discriminatory act against the plaintiff within the relevant limitations period measured back from the time of the complaint." *Id.*

The categories of continuing violations created by the court of appeals withstands scrutiny to find a rational distinction between the two. As noted by Judge Jones in his dissenting opinion in *Dixon:* "the application of the 'continuing violation' theory is inconsistent and confusing," 928 F.2d at 221, and its "precise contours ... are at best unclear," *id.* at 219. Thus, it is up to this Court to discern a path by which to navigate through the morass of the continuing violation theory to reach the solid ground upon which logic and justice stand.

In examining the two categories, I can see no rational distinction between the two. In each category, the plaintiff must find a discriminatory policy which is itself the actual discriminatory act. This policy may be established in either of two ways. First, the plaintiff may show the existence of a policy by establishing the occurrence of several discriminatory acts of the same nature committed by the defendant over a period of time, one of which occurred within the relevant statute of limitations period. This method establishes the offending policy by inference from the repeated discriminatory conduct of the same kind. Second, the plaintiff may establish "a longstanding and demonstrable policy of discrimination," *Dixon,* 928 F.2d at 217, an "over-arching policy" pursuant to which the defendant has acted against the plaintiff within the relevant limitations period. *Id.* The plaintiff either must establish the existence of a policy, pursuant to which the plaintiff has suffered discrimination within the period of limitations, or must show a series of discriminatory acts of the same kind which themselves establish a policy by which the plaintiff was discriminated against within

the limitations period. Thus, as far as this Court can discern, the court of appeals has made a distinction without a difference. There is, of course, more than one way to skin a cat; but the result is always the same. Likewise, there are different ways to demonstrate a discriminatory policy or practice which creates a circumstance of continuing violation against a particular plaintiff.

■ To apply the continuing violations doctrine to the present case, the Court finds a better framework for application in a Sixth Circuit opinion issued prior to *Haithcock. See Bell v. Chesapeake & Ohio Ry. Co.,* 929 F.2d 220 (6th Cir.1991). Not only does the *Bell* opinion provide a more definite standard for establishing a continuing violation, it also happens to apply the doctrine in the context of harassment. Thus, *Bell* is more closely resemblant of this case and is more instructive on the issues presently raised.

In *Bell,* the Court of Appeals explained that the doctrine of continuing violation developed in part over the concern "that many discriminatory acts occur in such a manner that it is difficult to define precisely when they took place." 929 F.2d at 223. With the view that such discriminatory acts, including harassment as alleged in this case, tend to "unfold rather than occur," the continuing violations doctrine is an attempt to militate against a strict, and sometimes harsh, application of the limitations requirement. *Id.*

Drawing upon the decision of the Michigan Supreme Court in *Sumner v. Goodyear Tire & Rubber Co.,* 427 Mich. 505, 398 N.W.2d 368 (1986),[3] the Sixth Circuit defined the elements of a continuing violation: "1) a policy of discrimination, 2) a continuing course of conduct, and 3) the present effects of past discrimination." 929 F.2d at 223.[4] The first element requires an allegation that an employer has engaged in a policy of discrimination. *Id.* In proving an employer's policy of harassment, a plaintiff must establish *"respondeat superior* liability by proving that

---

**3.** *Bell* involved a claim of racial discrimination in the form of harassment which allegedly created a hostile working environment for plaintiff. The claims in both *Bell* and *Sumner* were brought pursuant to the Michigan Elliott–Larsen Civil Rights Act, M.C.L. § 37.2101, *et seq.*

**4.** The Court notes that these same three elements form the nucleus of the Sixth Circuit's opinions subsequent to *Bell* which apply the continuing violations doctrine.

the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to implement prompt and appropriate corrective action." *Id.* at 224. The determination of whether the employer's corrective response was appropriate will vary from case to case and will depend upon the frequency and severity of the alleged harassment. *Id.*

The second element requires the plaintiff to allege and establish a continuing course of conduct. Three factors must be considered in application of the second element: 1) whether the subject matter of the alleged continuing conduct is sufficiently similar to connect the several acts into a continuing violation; 2) the frequency of the alleged acts; and 3) the degree of permanence of any of the separate acts—to ascertain whether the plaintiff was on notice that her rights were being violated. 929 F.2d at 223, 225; *Sumner,* 427 Mich. at 538–39, 398 N.W.2d 368.

The third element, referred to by the Sixth Circuit as the "permanence rule" or the "discovery rule," inquires as to " 'whether the act [has] the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate.' " 929 F.2d at 223–24 (quoting *Berry v. Bd. of Supervisors of Louisiana State Univ.,* 715 F.2d 971, 981 (5th Cir.1983)). The court instructed that:

> application of the third element of the continuing violation doctrine requires the court to determine when the plaintiff discovered he was a victim of a continuing policy or pattern of discrimination. Acts occurring outside the statute of limitations are barred as the basis for a cause of action, unless the plaintiff can demonstrate that they are the results of a policy and at least one act occurred within the limitations period.

929 F.2d at 224.

In *Bell,* the court of appeals found no continuing violation. With regard to the first two elements, the court held that the employ-er's response, although not corrective of the problem, was adequate to dispel allegations that the employer followed a policy encouraging harassment in the workplace. 929 F.2d at 224–25. The court noted that the incidents complained of consisted of six isolated occurrences over a period of nine years. *Id.* Moreover, the plaintiff's employer did intervene at times to ease racial tensions between the plaintiff and his co-workers:

> According to Bell's deposition, after the fight reported above as incident five, both men were taken aside by their supervisor and admonished in his office. CSX officials also removed KKK posters when Bell complained about them, and there is no contention that the officials were aware of them previously. These actions may fall short of what Bell would have liked the company to do. Nonetheless, they are not evidence of a policy of encouraging racial hostility in the workplace or of culpable indifference toward it, but of an opposite policy. We conclude, therefore, that as a matter of law, CSX bears no *respondeat superior* liability for the incidents complained of.

*Id.* at 225.

Regarding the third element, the *Bell* court held that each of the acts of which the plaintiff complained should have alerted him to the fact that he had suffered injury, "thereby imposing on him the duty to bring his action within the limitations period." *Id.* at 225. The plaintiff in *Bell* argued that he took no legal action at the time of the alleged incidents because he had decided that to keep a low profile was the best way to handle racial hostility at work. *Id.* The court concluded that plaintiff's failure to bring his action in a timely manner was a result of his own decisions, not a failure to apprehend injury. *Id.*

### 1. *Sexual Harassment*

■ In this action, plaintiffs' argue that their claims of sexual harassment properly demonstrate the existence of a continuing violation. With regard to the first element, plaintiffs seek to establish by inference that defendant City followed a policy of permitting sexual harassment by failing to enforce

the City's stated policy against harassment where defendant City should have known and, plaintiffs argue, did know of its occurrence. To establish a policy, plaintiffs can rely upon their cumulative allegations of harassment perpetrated by fellow officers and by their supervisors on the FPD. Plaintiffs each have pleaded some incidents of alleged harassment which cumulatively could support a finding that defendant City should have been aware of its existence. In fact, plaintiffs even cite to deposition testimony of FPD and City officials that could support a finding that defendant City did know that harassment was taking place at the FPD. Likewise, although defendant City has proffered evidence of some written policies and other attempts to inhibit sexual harassment among its workforce, plaintiffs should have the opportunity to prove to a jury that not only should defendant City have been aware of the alleged harassment but also should have taken stronger measures to end the offensive practices that allegedly created a hostile working environment for plaintiffs as female officers.[5] Specifically, there is support in the deposition of James Ananich, the City's Ombudsman, that the method for treatment of internal complaints was effectively chilled by high-ranking officials of the FPD who required any complaints made by police officers be directed through the FPD chain of command and not be taken straight to the ombudsman. Moreover, there is also evidence that City officials were aware of this position.

■ Despite the fact that defendant City provided a grievance procedure, voluntary seminars addressing the issue of harassment, and directed supervisory personnel to remove offensive materials from general view, such remedial steps are not dispositive of plaintiffs' claims. The remedial action taken by defendant City must have been "reasonably calculated" within the totality of the circumstances to end the alleged harassment. *Hansel v. Pub. Serv. Co. of Colo.*, 778 F.Supp. 1126, 1132 (D.Colo.1991), *citing Waltman v. International Paper Co.*, 875 F.2d 468, 479 (5th Cir.1989) and *Vance v. Southern Bell Tel. & Tel. Co.*, 863 F.2d 1503, 1511 (11th Cir.1989). This standard requires a jury determination in light of all evidence relevant to proving the existence of pervasive harassment within the FPD. In this case, with regard to each individual plaintiff's hostile environment claim, testimony from every plaintiff is relevant to the claims of each individual plaintiff. Thus, the mere availability of a grievance procedure does not *necessarily* insulate an employer from liability where the procedure provided is not reasonably calculated to put an end to the hostile work environment. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49, 63 (1986) (mere existence of grievance procedure and policy against discrimination, coupled with plaintiff's failure to grieve not dispositive of employer's liability). This is especially so where, as alleged in this case, the plaintiff's supervisor is a perpetrator of the harassment or the use of the grievance procedure is otherwise chilled by the employer or its agents. *Id.*

To establish the second element, each plaintiff must provide evidence of a continuing course of discriminatory conduct against

---

**5.** Defendant City argues that the claim made individually by each plaintiff, that all male police officers engaged in harassment and made sexually explicit remarks and comments to female officers on a continual basis, and that sexually explicit pictures demeaning to women were constantly present throughout the FPD, is too vague and conclusory an allegation to form the basis of a sexual harassment claim. Defendant City relies upon *Jackson–Colley v. Army Corps of Engineers*, 655 F.Supp. 122 (E.D.Mich.1987), in support of this argument. The Court finds this argument premature. The decision in *Jackson–Colley* was rendered following a bench trial on the merits of the plaintiff's claims. In that case, the district court made certain factual determina-

tions based upon the conflicting testimony of the plaintiff, the individual charged with sexual misconduct, and several witnesses to the events alleged. The court found that the allegations were not only isolated and vague, but also unsubstantiated. 655 F.Supp. at 126–27. The court determined, based upon the evidence as produced at trial, that the plaintiff had failed to prove that she had been harassed. This Court cannot make such a determination based upon the record as established through depositions alone because, even if the witnesses are lined up in numbers against plaintiffs' allegations, credibility of the various witnesses cannot be judged from a paper record.

herself. Likewise, to meet the third element, each plaintiff must individually establish an incident of sexual harassment and discrimination within the limitations period. In determining whether each plaintiff has met this burden, the Court must interpret the facts presented in the light most favorable to the plaintiffs. Moreover, the Court notes that where both parties cite to the same deposition testimony and come to different conclusions regarding what that testimony shows, interpretation of that testimony is a question for the jury. To determine this motion for summary judgment presents a problem because plaintiffs have not ascribed a period of time to each alleged instance of sexual discrimination and harassment. Nevertheless, plaintiffs' allegation is that the harassment allegedly occurring daily at the FPD was so pervasive as to create a working environment hostile toward all females. With regard to this claim, made individually by each plaintiff, it is a question for the jury to determine whether this constant harassment takes place, the hostile environment exists, and whether each plaintiff has proven an incident occurred within the statute of limitations period resulting in injury that has adversely affected that plaintiff's performance of her job duties or has resulted in other injury. Should the jury find each plaintiff's claims to be true, and should plaintiffs prove individually that such conduct occurred within the limitations period, then each plaintiff will have satisfied the elements of a continuing violation. If the jury determines that defendant City should have known of the continuous sexual harassment allegedly occurring on a day to day basis at the FPD, then the fact that a particular plaintiff did not report a particular event to her supervisor or to another representative of the City does not relieve the City from liability if, and only if, plaintiffs also prove that defendant City failed to take necessary and reasonable action to curb such harassment. These isolated incidents, however, will only be actionable upon a finding of the above in conjunction with a finding by the jury that the event took place and was a result of the hostile environment created by the City's failure to remedy the harassment of which they should have been, or were, aware.

The Court cannot say at this time that plaintiffs cannot succeed in establishing that their sexual harassment claims are based upon a continuing violation and, therefore, cannot grant summary judgment to defendant City on this issue. After plaintiffs have presented their case to the jury, it may be appropriate for defendant City to renew its motion to bar plaintiffs' claims for sexual harassment allegedly occurring prior to February 1984.

### 2. *Disparate Treatment*

 Each of the plaintiffs also has made a claim that defendant City is liable for alleged incidents of discriminatory treatment of plaintiffs in terms of their employment on the basis of sex.[6] These claims require more individualized treatment. First, however, there are certain general questions relating to all or many of the plaintiffs which the Court will address presently.

There are certain claims regarding prior lawsuits that were filed against the City of Flint by certain of the plaintiffs to this action and also by non-plaintiff female officers. Defendant argues that this evidence cannot be admitted in this case because there were never any findings that defendant City was at fault, and because the plaintiffs in those cases settled their actions, thereby disclaiming any allegations made therein. The Court holds that evidence of the alleged acts, underlying these lawsuits, may be admitted by plaintiffs to support their claims of discrimination in terms of employment. The lawsuits themselves have no *res judicata* effect, and mention of the settlements may be prejudicial to defendant City. This issue should be subject of a motion in limine. If defendant City denies knowledge of the allegations made in the prior lawsuits, it may be permissible for the plaintiffs to introduce evidence

---

**6.** The Court notes that in many instances it is difficult to distinguish between plaintiffs' claims of sexual harassment and of discrimination on the basis of sex. As treated above, plaintiffs will be left to their proofs on the issue of sexual harassment. Any evidence found not to be supportive of plaintiffs' claims of sex discrimination may, nevertheless, be admissible for proof of the existence of sexual harassment and the allegedly resulting hostile environment at the FPD.

that the lawsuits were filed. Any discussion of the settlement of those lawsuits, however, has little relevance to whether the alleged discrimination actually occurred. If such discrimination is to be used to establish a continuing course of conduct—but not actionable in itself in this case—plaintiffs will have to prove to a jury in this case that such events occurred and were discriminatory in nature.

■ Several plaintiffs also complain that defendant City's implementation of a physical agility requirement to be factored into each cadet's final ranking was an act of discrimination from which all female officers suffer. Although admittedly facially neutral, the implementation of the policy in the first year that women were allowed to train for the position of police officer may support an inference that the intent of the policy change was to favor male cadets. The plaintiffs claiming that their final scores were lower because of inclusion of the physical agility test also claim that this lower score will affect their employment throughout their tenure with the FPD. Defendant City argues that because this physical agility test applied to both males and females there is no discrimination in its use. Nevertheless, despite its facial neutrality, if plaintiffs can establish that the physical test was implemented for the purpose of discriminating against women, then the claim is a good one. Plaintiffs have argued that the test was implemented with a discriminatory motive and such a conclusion may be inferred from the circumstances alleged. This is a question to be resolved by the jury.

■ Various plaintiffs also have alleged that defendant City's policy of using an officer's seniority as a tie-breaker for promotion, assignment preferences, and layoff purposes has a disparate impact upon female officers in the FPD. Defendant City argues that because the use of seniority is gender-neutral it cannot be the source of liability against the City. The Court agrees that the policy in and of itself is facially neutral. Nevertheless, as with the AAP itself, the use of seniority as a tie-breaker may be challenged if it

has the result of perpetuating the effects of past discrimination in hiring and promotion. This allegation raises questions which must be resolved by the trier of fact.

The question at this time is whether each plaintiff has alleged an instance of disparate treatment discrimination within the limitations period and, if so, whether the incidents alleged by plaintiffs constitute a continuing violation to allow them to assert claims regarding incidents that occurred prior to the limitations period.

### Plaintiff Barcume (McManaman)

■ Plaintiff Barcume alleges discrimination in terms of employment—exclusive of her claim for discrimination in hiring and promotion. Among her allegations, plaintiff Barcume claims that women were consistently assigned to patrol paired with other women, which allegedly deprived her of the valuable experience she would otherwise have gained if paired with a veteran, male police officer. While this claimed discrimination is asserted to demonstrate the FPD's discrimination in promotion—lack of training hampering plaintiff's promotional opportunity—it is also evidence of disparate treatment of plaintiff on the basis of her sex. Plaintiff may assert this claim before a jury. Defendant may offer evidence that women were not most often paired with other women, and that women were not restricted as to their work assignments; or defendant may provide a non-discriminatory reason why this was so.

Likewise, plaintiff alleges that female police officers were restricted, if not by rule then by custom, to handling "female problems." Plaintiff also claims that female officers were at times singled out for harsher disciplinary action than males, and plaintiff provides examples. Although defendant City disputes that women are disproportionately assigned to handle rape cases, and that the discipline of female officers was different than that of males, these allegations present questions for the jury to determine what happened on each occasion alleged by plaintiffs.[7]

---

7. Defendant City argues that the assignment of women to handle a disproportionate number of

rape complaints is "well accepted." While this may be true, plaintiffs should be allowed to pres-

■ Additionally, plaintiff Barcume makes a claim that a Lt. Hannon intentionally assigned women, including plaintiff Barcume, to work in an undesirable area on the basis of her sex. Whether this assignment was motivated by legitimate reasons, as asserted by defendant City, is a question to be determined by the jury.

Plaintiff Barcume makes various complaints about specific incidents of harassment or discriminatory treatment by other male officers. These incidents include: plaintiff's partner refusing to talk to her for an entire eight hour shift; the same partner refusing to back her up on the job; and male officers refusing to share study materials for the sergeants' exam. Defendant City argues that the City cannot be held liable for these actions by individuals. The Court holds that these instances provide support for plaintiff's claim of sexual harassment only if plaintiff proves that the City knew or should have known of their occurrence [8] and failed adequately to treat such discrimination. These allegations, however, do not support a claim of disparate treatment discrimination by defendant City against plaintiff on the basis of her sex.

Plaintiff Barcume's allegation that defendant City's policy of refusing to pay any officer for time spent away from the job on personal, legal business is discriminatory to her on the basis of sex is unfounded. There is no disparate treatment in the policy. Both male and female officers are treated alike and there is no allegation of disparate impact due to this policy.

Plaintiff Barcume's complaint that some police officers were allowed to leave the room during the 1985 promotional exam is irrelevant. This activity, however improper it may have been, is not in itself sexually discrimina-

tory. Unless plaintiff has evidence that only males were *allowed* to leave the room—not merely her statement that only males did in fact leave the room—there is no support for plaintiff's belief that this impropriety was sex based.

Plaintiff Barcume alleges that in 1975, plaintiff, along with three other women, were disciplined by Sergeant Bower for improper conduct while males involved in the same incident were not disciplined. Although this may have been discriminatory on Sergeant Bower's part, the evidence in the record indicates that Sergeant Bower's handling of the situation was criticized by his superiors and he was counselled as to his impropriety. *See* defendant's exhibit 20 in support of defendant's motion. While this evidence does not support plaintiff's claim of disparate treatment by defendant City, it may be evidence of sexual harassment on Sergeant Bower's part and evidence of the alleged hostile environment in which plaintiff worked.

Plaintiff Barcume, as well as several other plaintiffs, alleges that certain events or employment decisions were made on the basis of sex and provides as proof of that motivation her own subjective belief that the action would not have been taken against a male officer. For example, plaintiff alleges that she was verbally abused by Lt. McFadden and Deputy Chief Benson for her refusal to use personal time to campaign for a millage. Plaintiff also states that her receipt of a low performance rating from a supervisor under whom she has never worked was motivated by that officer's dislike of women in the department. These allegations, without further corroborating evidence as to motive, may say more about plaintiff's state of mind than they do about the perpetrator's intent or defendant City's liability.[9]

---

ent their claims to a jury to determine if this well accepted preference is discriminatory, and whether through such a policy defendant City has discriminated against plaintiffs in the terms and conditions of their employment.

8. This would include a finding that these actions were the result of a hostile work environment of which defendant City was, or should have been, aware.

9. Following plaintiffs' case in chief, it would be appropriate for defendant City to move for a

directed verdict regarding all issues of fact and law that defendant City feels have not been supported by sufficient evidence. The Court notes, however, that while plaintiffs' subjective beliefs may be insufficient to persuade the jury, such insufficiency most likely is a point to be argued by defendants' attorneys in their closing argument to the jury. The Court merely cautions plaintiffs that some issues may require more than plaintiffs' subjective beliefs where they are met by defendant City with objective evidence to the contrary.

■ Finally, plaintiff Barcume alleges that defendant City discriminated against her in December 1986 when she was promoted to sergeant at a reduced pay scale implemented in October 1986. Plaintiff claims that a similarly situated male officer, promoted to sergeant in November 1986, was promoted at the old, higher pay scale, his promotion made retroactive to early October. Plaintiff alleges that Officer Pommerantz received preferential treatment because he is a man, and plaintiff was denied such treatment because she is a woman. Defendant City does not address this claim of disparate treatment, but rather defends its policy of restructuring the pay scale at the rank of sergeant. Whether these facts are true, and whether they are evidence of discrimination are questions to be decided by a jury.

■ Plaintiff Barcume has alleged three instances that may support her claim of disparate treatment—other than in defendant City's hiring and promotional practices. Specifically, plaintiff has alleged that she, and most women on the FPD, are consistently assigned to patrol paired with other women, that female officers historically have been called upon to respond to certain "female problems"—such as strip searches and rape complaints—often outside their patrol areas, and that plaintiff and her female partner once were assigned to work in an undesirable area of the City while males were allowed to rotate in and out of that assignment. These allegations, if proven at trial, are sufficient to establish a continuing violation with regard to disparate treatment.

Defendant City is responsible for the personnel actions of its police department, including the basis for making job assignments and policy directives. Therefore, there is *respondeat superior* liability against defendant City for actions taken by supervisory personnel at the FPD.

Although plaintiff Barcume alleges only three examples of disparate treatment that may support her claim, two of these are broad allegations, indicating discrimination over a long period of time. In this respect, plaintiff's disparate treatment claim is similar

to her sexual harassment claim. These allegations establish a continuing course of conduct by defendant City and its employees.

Finally, the three examples of disparate treatment mentioned above were not of the type that would have alerted plaintiff Barcume that she had suffered injury. Again, as with harassment, the alleged disparate treatment of females by the FPD accumulated over time to affect plaintiff. Moreover, each time plaintiff was assigned to a particular partner or job assignment because of her sex, there was another violation. As pleaded, plaintiff states her allegations broadly. Therefore, the establishment of a continuing violation is dependent upon a jury finding that plaintiff suffered disparate treatment discrimination on the basis of sex within three years of the filing of the Second Amended Complaint.

### Plaintiff Bortner

Plaintiff Bortner served as a police officer within the FPD from April 20, 1975 until 1986, when she resigned as part of a plea agreement with the United States Attorney. Plaintiff makes several claims for which she signed a settlement and release with defendant City on November 15, 1983. With regard to plaintiff Bortner's claims, within their joint final pretrial statement the parties shall include a stipulation as to which claims were already included as part of plaintiff's 1976 MDCR complaint, the charge issued by the MDCR in 1980, and presented in the testimony of the 1983 hearings.[10] These incidents are not actionable here due to plaintiff's release of defendant City from liability therefor. As noted previously, these occurrences still may be admissible to establish a policy of discrimination.

Plaintiff Bortner alleges several incidents that she claims are evidence of sex discrimination. Nevertheless, most of these claims appear to be part of plaintiff's 1983 settlement agreement. With regard to plaintiff's claims of disparate treatment, the only alleged act occurring within the statute of limitations period are related to the Grand Jury

---

**10.** The parties shall make similar stipulations with regard to all claims asserted by the plaintiffs herein that defendant City alleges were raised at a prior proceeding.

investigation and indictment occurring in 1986, pursuant to which plaintiff was forced to resign her position with the FPD. Plaintiff alleges that she was targeted by the investigation specifically because of her prior legal battles with the City of Flint, including the present lawsuit. Nevertheless, defendant City has established through the affidavit of Robert Haviland, the Assistant United States Attorney who initiated the federal grand jury investigation, that defendant City had no part in negotiating the plea agreement reached with plaintiff Bortner nor in directing the focus of the investigation. Specifically, Mr. Haviland testified that:

3. The Michigan State Police approached Mr. Haviland and asked the federal government to assist in the investigation.

4. He is the person responsible for initiating and conducting the investigation. *The City of Flint did not direct the focus of the investigation or have any input into the persons called to testify before the grand jury or on the persons indicted by the grand jury. Specifically, no one from the City of Flint, including then Mayor James Sharp or Richard Dicks, indicated in any manner whatsoever that it wanted Plaintiffs Burnett and Bortner targeted by the federal grand jury investigation.*

5. It was the position of the United States Attorney's Office that any police officer charged with a felony in the indictment would be permitted to enter a plea of guilty to a misdemeanor only if they agreed to resign from the Flint Police Department.

6. Although Lt. DeKatch of the Flint Police Department agreed with this position, it was strictly the decision of the United States Attorney ... to adopt this position.

Thus, all indicted officers were presented with the same plea offer. There was no sex discrimination involved with the grand jury investigation or plaintiff's forced resignation.

Plaintiff Bortner fails to state a claim within the limitations period, within three years of the filing of the Second Amended Complaint, and, therefore, plaintiff's disparate treatment claim is DISMISSED.

### Plaintiff Burnett

Like plaintiff Bortner, plaintiff Burnett does not allege an incidence of disparate treatment discrimination within the relevant limitations period to support her claim. The only claims of disparate treatment that she makes within the limitations period relate to her indictment by a federal grand jury on drug charges. Plaintiff claims that the initiation of the indictment process itself arose from sex discrimination. This allegation, however, is unsupported by objective evidence. In the face of AUSA Haviland's affidavit, this claim is baseless.

Therefore, there can be no continuing violation of disparate treatment discrimination based upon the evidence even in the light most favorable to plaintiff. Similarly, there is no claim within the limitations period. Thus, plaintiff Burnett's claim regarding disparate treatment on the basis of sex is DISMISSED.

### Plaintiff Drennan

Plaintiff Drennan alleges numerous instances of harassment by fellow officers and supervisors, including even Police Chief Durbin in 1983. Plaintiff fails, however, to make any claims of disparate treatment based upon sex that allegedly occurred within the limitations period. Therefore, excluding any claims for discrimination in hiring and promotional practices, plaintiff can not support a claim of disparate treatment discrimination in the terms and conditions of her employment. Accordingly, these claims are DISMISSED.

### Plaintiff Gasper

Plaintiff Gasper identifies only three instances of alleged sex discrimination, as distinguished from her claim of sexual harassment. First, plaintiff complains that, throughout her tenure on the FPD, male officers have displayed a disrespect and mistrust of female officers generally. Plaintiff alleges that one time, her male partner, Officer Dennis Pommerantz, requested that another male officer "stick around" in case they had any trouble handling a domestic dispute.

This led plaintiff to believe that her partner did not trust her to back him up. Whatever plaintiff's subjective feelings, however, officer Pommerantz was not plaintiff's supervisor and there is no indication that plaintiff ever reported this incident or any similar incidents, and there is no evidence that defendant City adopted a similar policy. Therefore, this is not evidence of discrimination for which the City of Flint might be liable.

██ Second, plaintiff claims that in 1986, Sergeant Meyer, plaintiff's supervisor, harassed plaintiff in an attempt to drive her out of her job so that she could be replaced by a male friend of his. Plaintiff alleges that Sergeant Meyer kept meticulous track of plaintiff's whereabouts and daily reports to make sure that plaintiff was doing her job properly. Plaintiff alleges that males were not subjected to such close scrutiny. This conduct does not constitute disparate treatment in terms of plaintiff's employment for which defendant City can be held liable. Sergeant Meyer's conduct may be considered harassment, but plaintiff was not removed from her position, and there was no adverse employment action taken against plaintiff due to the complained of conduct. This is the only incident of disparate treatment that plaintiff alleges occurred within the statute of limitations period. Therefore, there is no continuing violation regarding plaintiff's claims of disparate treatment not related to defendant City's hiring and promotional practices.

Third, plaintiff alleges that in January 1983 plaintiff complained to Deputy Chief Schecter that she was being harassed by Sergeant Butler. Plaintiff claims that while she was reassigned to a desk job against her wishes, Sergeant Butler went unpunished. Unfortunately for plaintiff, this incident allegedly occurred more than three years prior to the filing of plaintiffs' Second Amended Complaint. Therefore, there being no continuing violation for disparate treatment against plaintiff Gasper, this incident is not actionable.[11] Plaintiff Gasper's disparate treatment claim is DISMISSED.

### Plaintiff Martin (Compton)

██ Plaintiff Martin first alleges that the physical agility test was implemented with the intent and effect of discriminating against female cadets in the computation of their final ranking at the academy. As discussed previously, this allegation presents a question for the jury with regard to the intent of defendant City in implementing this policy. Of course, plaintiff also must establish before the jury that implementation of this test negatively affected her final ranking and, subsequently, the terms and conditions of her employment. Similarly, as also discussed above, plaintiff Martin's allegation that the seniority system implemented by defendant City has a discriminatory effect on women presents questions to be determined at trial. To the extent that both the agility test and defendant City's use of seniority affect plaintiff's promotional opportunities, these claims relate back to plaintiffs' original complaint. As these practices affect other areas of plaintiff's employment, however, they are actionable only if plaintiff can establish defendant City's alleged disparate treatment of her as a continuing violation.

Plaintiff Martin further alleges, as do other plaintiffs, that women historically have been disciplined more harshly than men, that undesirable assignments ("female problems") were made on the basis of sex, that plaintiff was usually assigned to novice female partners (thereby hampering her opportunity for experience and promotion), and that women were most often confined to patrol duty in lieu of other areas which would have helped them on the sergeants' exam. Defendant City denies these allegations. Nevertheless, as discussed previously, these allegations raise questions of fact for the jury.[12] Although defendant City very well may dispel these allegations as untrue, a jury must determine whether these incidents actually oc-

---

11. This incident may, however, be supportive of plaintiff's claim of sexual harassment discrimination.

12. As with all plaintiffs' claims, plaintiff Martin must be more specific at trial regarding the time frame in which these alleged discriminatory actions occurred. Each plaintiff must prove instances of disparate treatment within the limitations period to recover for prior instances of discrimination.

curred and whether defendant City is liable therefor pursuant to a policy or custom.

Plaintiff Martin's complaints regarding the sharing of study materials for use in preparation for the sergeants' exam, and other alleged harassment by various individual officers, are also dealt with above in the context of other plaintiffs. Similarly, while these allegations may support plaintiff's claim of sexual harassment, creating a hostile work environment, they are not instances of disparate treatment attributable to defendant City.

### Plaintiff McIntyre

The only incidents of disparate treatment—apart from any claims regarding hiring and promotion—that plaintiff McIntyre alleges that may have occurred within the limitations period involve the FPD's alleged policy or custom of removing female officers from their assigned districts to search a female suspect or to respond to a rape complaint while male officers were never required to leave their districts to perform searches of male suspects. Plaintiff has alleged that she complained to Sergeant Hittle of this double standard and was told that was just the way it is. As dealt with previously, if this allegation is found by the jury to be true, and to be an act of disparate treatment based on sex, then it may be part of a continuing violation against plaintiff. To establish a continuing violation of disparate treatment against this plaintiff, the jury must find that such a discriminatory act occurred within the limitations period. If the jury finds that plaintiff was not wrongfully taken out of her district to respond to a "female problem," then none of plaintiff McIntyre's claims for disparate treatment other than those affecting her hiring and promotion will be permitted.

█ Plaintiff McIntyre makes several allegations of disparate treatment in addition to those indicated above. Plaintiff claims that in 1976, at the police academy, she was forced to take part in more than her share of boxing matches, and more than any male cadet was required, because she was the only female in her training group. As defendant City notes in its brief, this allegation based solely upon plaintiff's personal belief is not sufficient to prove that she was forced to box more than males. This is not evidence of discrimination. Nonetheless, plaintiff also complains that following her treatment and medication for suffering bruised ribs from boxing she was required to return to the ring immediately. Plaintiff asserts that other male cadets were allowed to recuperate before being placed back in the boxing ring. Provided that plaintiff can prove this allegation to the jury, and the jury finds the determination was made based upon her sex, it may be actionable as an occurrence of discrimination and part of a continuing violation.

█ In 1977, plaintiff McIntyre alleges that she was denied the opportunity to train for the special emergency rescue team because she is a woman. Defendant City argues that this was not discrimination by the City, because plaintiff was denied this assignment only for lack of separate facilities for males and females at the independent facility at which the training took place. This defense, however, all but admits that plaintiff was excluded from this assignment because of her sex. That the facility to which the FPD was sending its officers for training did not have adequate accommodations for females does not *per se* insulate defendant City from liability for excluding plaintiff because of her sex. This allegation may support plaintiff's continuing violation theory.

█ Plaintiff McIntyre alleges that she was discriminated against during her pregnancy in 1980. Defendant City argues that these claims are not actionable due to the settlement agreement signed between defendant City and the Michigan Department of Civil Rights in 1983. Even if these claims are barred due to the settlement agreement, plaintiff may still assert them as evidence in establishing a continuing violation by defendant City. As with plaintiff Bortner, the parties shall include within their joint final pretrial statement a stipulation as to which claims were included as part of the MDCR charge filed in 1980 and settled in 1983.

Plaintiff McIntyre alleges incidents occurring in 1982 or 1983 that would support the establishment of a continuing violation for

disparate treatment. Plaintiff alleges that she was treated differently from a similarly situated male officer who, at the same time that plaintiff had suffered a broken ankle, suffered from a broken leg. Both injuries allegedly were work-related, and plaintiff claims that while she was assigned to work at the patrol desk, the male officer, Phil Smith, was allowed to remain at home on sick leave. Despite the fact that other male officers may at other times have been reassigned to the patrol desk while recovering from work-related injuries, plaintiff has a colorable claim that her sex was behind the decision that she would continue to work while Officer Smith would take sick leave. It is a fact to be determined by the jury.

Plaintiff McIntyre's allegation that male officers assumed that she was uninterested in challenging or dangerous assignments due to her status as a mother does not state a claim for disparate treatment because of her sex. Plaintiff identifies one instance of this alleged discrimination, that she was the last choice to provide security for the Turkish Ambassador's wife who was visiting the area. This disparate treatment was on the basis of the fact that she had a child, not because she was a woman. Even plaintiff states that officers without children were asked to take the assignment before plaintiff was asked. Moreover, of these officers, most were female.

Finally, plaintiff McIntyre alleges that she has been singled out, as have other women, for unfair discipline merely because she is a woman. Like similar claims from other plaintiffs, this provides a jury question. Plaintiff must, however, allege specific incidents of allegedly unfair discipline and more than her subjective belief that males were not disciplined as harshly.

Provided that plaintiff McIntyre includes within her proofs at trial evidence of discriminatory conduct occurring within the limitations period, the Court finds that plaintiff has established a continuing violation for disparate treatment.

### Plaintiffs Skidmore (Parrish) & Sova

▮ Although plaintiffs Skidmore and Sova allege conduct that may support their claims for disparate treatment in terms of hiring and promotional practices of defendant City, plaintiffs fail to allege any incidents of disparate treatment with regard to other aspects of their employment within the relevant limitations period. Therefore, plaintiff Skidmore's and plaintiff Sova's claims regarding the latter form of disparate treatment are DISMISSED.

With regard to plaintiff Skidmore's sexual harassment claim, her allegation that another female officer, Officer Haggadone, received more favorable treatment because of Officer Haggadone's alleged affair with Deputy Chief Gilmore, is irrelevant. No matter what the EEOC regulation might proscribe, there is no discrimination based upon plaintiff's sex where her supervisor bases his decision on his relationship with another woman more favored. The discrimination, if true, would be based upon Gilmore's relationship with Officer Haggadone. In showing Officer Haggadone more favorable treatment than plaintiff, plaintiff's gender is immaterial. *Hickman v. W–S Equipment Co., Inc.,* 176 Mich. App. 17, 21, 438 N.W.2d 872 (1989). Plaintiff is correct, however, that other alleged incidents of sexual harassment are to be determined by a jury as evaluated from the perspective of the reasonable woman. *See Radtke v. Everett,* 189 Mich.App. 346, 471 N.W.2d 660 (1991).

### Plaintiff Surdu

Plaintiff Surdu alleges several discriminatory incidents. In 1983, while plaintiff received two months training in Patrol and Foot Patrol, plaintiff alleges that she was subjected to harassment based upon her sex, creating a hostile work environment. Plaintiff alleges that she was assigned to work exclusively with male training officers. One training partner, Officer Walt Davis, refused to let her drive the patrol car and consistently treated her like an idiot. Other training officers refused to include plaintiff in their conversations. When plaintiff spoke to Sergeant Caterer about this, he dismissed it as "good natured hazing" that occurs with all rookies. Plaintiff insists that her "hazing" was unique and extreme and based upon her sex. These allegations provide support for

plaintiff's sexual harassment claim, but fail to support a claim of disparate treatment.

Plaintiff Surdu complains about her receiving a reprimand along with four other male officers for an alleged incident of police brutality that occurred in 1983. Plaintiff claimed that she did not observe any police brutality and her reprimand for falsifying reports and failing to tell the truth was unwarranted. The Court agrees with defendant City that this incident does not support plaintiff's claim of sex discrimination. There was no disparate treatment because of sex in this incident, and four males also involved were also disciplined. If plaintiff truthfully did not observe the alleged brutality, then an injustice was committed by her discipline. Nevertheless, there is no evidence that gender played a role in her receiving the reprimand.

Similarly, statements allegedly made by plaintiff's fellow officers to her, and to the public, that may have been derogatory in nature and show prejudice against women, while being supportive of plaintiff's sexual harassment claim, do not support a claim for disparate treatment. Plaintiff's allegation that certain male officers refused reassignment to Patrol to avoid being paired with a black or a female officer also are not probative of any disparate treatment of plaintiff by defendant City. This allegation does not even prove or even allege that a decision was made, harmful to plaintiff, based upon plaintiff's sex.

Plaintiff Surdu alleges that female officers routinely were paired with other female officers. Furthermore, alleges plaintiff, at every opportunity, female officers who had been rotated to work with a male officer would be re-paired with another female. This disparate treatment allegedly deprived plaintiff of training and experience that she would have gained by working with veteran male officers. Whether this is so must be determined by the jury. Provided that this action occurred within the limitations period, plaintiff has stated a disparate treatment claim. Plaintiff has not, however, stated any supportable claims of disparate treatment outside the limitations period. Thus, the continuing violation doctrine does not apply to plaintiff Surdu.

Plaintiff Surdu also has alleged that her supervisors have treated her with less respect than they treat male officers. Plaintiff alleges one incident that, if true, would represent disparate treatment. In 1990, Officer Jeff Wheeler mentioned to plaintiff that he was always asked by Lieutenant Hecht who he would like to be paired with. Plaintiff has stated that she has never been given this choice.

The other incident alleged by plaintiff to illustrate that her superiors treated her with less respect relates to plaintiff's relationship with Lt. Hecht. Allegedly, in 1990 Lt. Hecht became enraged at plaintiff when he discovered that she had sought guidance as to proper procedure from another officer after already being told by Lt. Hecht that she had appropriately handled a certain situation. Whether Lt. Hecht's subsequent hostility toward plaintiff and his reference to her in a staff meeting as a "bitch" were harassment is a question for the jury. His treatment of her was not, however, disparate treatment otherwise affecting her employment.

### Plaintiff Talt–Harris

Plaintiff Talt–Harris makes numerous allegations of disparate treatment based upon her sex. Most of these relate to disciplinary measures taken against plaintiff by the FPD. Defendant City argues that all disciplinary actions taken against plaintiff were justified for other permissible reasons not related to gender. Clearly there is a dispute as to the intent or motive behind these actions. This presents a question for the jury.

### Plaintiff Williams

Plaintiff Williams alleges that in 1972 she attempted to apply for a position with the FPD as a police officer. At that time, she claims she was told that women were not accepted as police officers and that no police woman positions were available. Defendant City does not deny that prior to 1974 the City had a policy of refusing to hire women as police officers. Defendant City does argue, however, that plaintiff was not harmed by this because she either could have

applied for a police woman position or even hired in as a police officer after 1974. Nevertheless, argues defendant City, plaintiff did not apply again until 1982, at which time she was hired as a police officer. Defendant City feels that plaintiff's claim for discrimination in hiring practices is not actionable. The Court disagrees.

Plaintiff Williams alleges that, while at the police academy, she injured herself while running. Plaintiff was told by her doctor not to run, and so did not run. When Chief Durbin discovered that plaintiff was not running, he personally berated her. Plaintiff claims that she was singled out for discipline, while similarly situated male cadets who also had suffered non-visible injuries were not required to run. Defendant City points out that plaintiff also identified two other female cadets who did not have to run. Plaintiff, however, distinguishes herself from these females, indicating that their injuries were visible, while the male cadets' injuries, and plaintiff's, were not. This clearly presents a question of fact and, if proven, would support plaintiff's disparate treatment claim.

Plaintiff Williams alleges that the use of a physical agility test in calculating a cadet's final rank at the academy negatively and disparately impacts the careers of female officers. Defendant City insists that the physical agility test is gender neutral. This may be probative of a discrimination claim. Each plaintiff, however, who alleges that this test has a disparate impact must provide proof of that impact generally, and that she has been injured by its use specifically.

Plaintiff Williams alleges further incidents of disparate treatment which present questions of fact for the jury to determine at trial. Plaintiff alleges that plaintiff, and other women, were reprimanded for talking in the hallway at the police academy while men commonly were not. Plaintiff alleges that women recruits, unlike males, were not given their assignments of choice. Plaintiff alleges that she was transferred out of Special Operations and assigned to the Bridge, even though she had seniority and requested assignment to Patrol. Plaintiff complains that when her partner died she was not offered a promotion to his position but rather was required to train a male officer to take that position. Finally, plaintiff alleges that when she was reassigned from the Bridge to Patrol because Sergeant Olson had a problem with women working on the Bridge with him, her complaints to Chief Duncan were met with a refusal to take action.

Defendant City insists that these incidents do not amount to a claim of discrimination. The Court feels that defendant City's denial of any discriminatory intent or motive behind these actions, and dispute as to whether some incidents occurred, provide issues for resolution by the jury.

Finally, plaintiff makes a claim that when she worked in Special Operations her male co-workers excluded her from day to day operations and refused to share information with her. This is not evidence of disparate treatment for which defendant City can be held liable. This may, however, support plaintiff's sexual harassment claim.

### Plaintiff Marshke

█ Plaintiff Marshke makes several allegations in support of her disparate treatment claim. Plaintiff complains about her initial interview with Chief Durbin during her application for a position with the FPD. Allegedly, Chief Durbin asked plaintiff whether she could handle physical situations with criminals, and whether she would turn in a male officer who took an interest in her. Plaintiff states that these questions made her feel uncomfortable and, upon reflection, she finds them to be discriminatory. Plaintiff alleges that Chief Durbin does not ask these questions to slightly built male candidates. Defendant City argues that these questions do not represent disparate treatment or sexual harassment. To the contrary, these questions were perfectly reasonable, and plaintiff has no idea what questions are asked of male candidates. The Court finds that this interview did not represent disparate treatment. Plaintiff's employment was in no way affected by these questions. This may, however, support plaintiff's allegations of harassment. The jury must determine whether these statements would be offensive to a reasonable woman.

Another incident of which plaintiff Marshke complains occurred in 1983 when plaintiff was transferred out of the Patrol bureau. Both Officer Norm Day, plaintiff's partner, and Sergeant Hassenfratz told plaintiff that she was being transferred because Officer Day's wife was giving him problems about working with a female officer. Sergeant Hassenfratz reassured plaintiff that her reassignment had nothing to do with her job performance. Thus, defendant City argues that it was because of Officer Day's wife that plaintiff was transferred, and not because of plaintiff's sex. The Court finds this argument to be specious. Because plaintiff was a female, she was transferred out of Patrol. The transfer was not based upon plaintiff's personality nor her performance, but rather because her male partner's wife had a problem with his working with females. This is a clear example of disparate treatment.

Plaintiff next alleges that women were, more often than not, paired to work with other female officers. Whether this is true is a question for the jury.

Plaintiff Marshke alleges that, while assigned to Foot Patrol in 1986, Sergeant Meyer required her to perform tasks that he did not require of male officers. For example, plaintiff alleges that she was required to spend a disproportionate amount of time tagging abandoned vehicles. Plaintiff alleges that after complaining of this perceived discrimination to Captain Hannah, she was told not to worry about Meyer, "that's just the way he is." Defendant City argues that this alleged discrimination is merely plaintiff's perception that she was given undesirable tasks and that the same was not true for males. This factual dispute requires resolution at trial.

Plaintiff Marshke further alleges that while assigned to Patrol in 1988–89, the job of working the Patrol desk was always assigned to a female officer. This, claims plaintiff, was discriminatory and degrading because the position requires the officer assigned thereto to perform secretarial duties. Defendant City insists that this claim also is merely a matter of plaintiff's perception and therefore is not actionable. As noted above, given the parties positions, this issue requires a jury resolution.

The final instance alleged by plaintiff Marshke which supports her disparate treatment claim is that in rape cases, male officers often prompted the victims to request a female officer. Whether this is true is a matter for the jury to decide. By itself, conduct of individual officers does not make the City liable for such action. Nevertheless, if this alleged conduct is part of a policy or custom of the FPD to have female officers handle complaints of rape because of their sex, it is evidence of disparate treatment and may place liability upon the city. As discussed previously, this issue must be resolved at trial.

As dealt with previously, plaintiff Marshke's allegation that individual male officers refused to assist female officers in studying for the sergeants' exam is not supportive of a disparate treatment claim against defendant City. Likewise, statements made by individual male officers to the general public, while they might support plaintiff's harassment claim, do not implicate defendant City for disparate treatment.

Finally, plaintiff Marshke alleges that she was discriminated against in her position as Crime Watch Coordinator. Plaintiff complains that defendant City failed to provide her with all the incentives that had been promised to her when she accepted the newly created position. Plaintiff's claim relies upon her personal belief that a male would have received better treatment. This does not support plaintiff's claim.

### Summary Regarding Continuing Violations

Defendant City's motion to limit plaintiffs' claims to instances of discrimination which occurred after to February 1984[13] is DENIED with regard to the following plaintiffs: Barcume, Martin, McIntyre, Talt–Harris, Williams, and Marshke. Of course, each of these plaintiffs must prove at trial that, of

---

**13.** This determination is exclusive of any claims alleging disparate treatment in hiring or promotional practices which have been found to relate back to the filing of the original complaint.

the incidents of discrimination alleged, one of them occurred within the limitations period. Defendant City's motion is GRANTED with regard to plaintiffs Bortner, Burnett, Drennan, Skidmore, and Sova. With regard to plaintiffs Gasper and Surdu, the Court has held that these plaintiffs have not alleged any colorable instances of disparate treatment discrimination occurring prior to February 1984 and, therefore, defendant City's motion to limit these claims is MOOT. Furthermore, the Court notes that any claims of disparate treatment allegedly occurring after February 1987 may be litigated in this case; however, these claims are not considered to be part of any continuing violation, and will not have the effect of resurrecting any alleged discriminatory conduct occurring prior to the limitations period as part of a continuing violation.[14]

### III. Discrimination Occurring After February 1987

Defendant City argues that claims of alleged discriminatory conduct occurring after February 1987 are not a part of this lawsuit. Plaintiffs respond that plaintiffs have notified defendants of new claims and, therefore, they are actionable as well as all discriminatory conduct occurring up until trial.

After consideration of the parties' positions, and review of the Federal Rules of Civil Procedure, in the interests of justice, the Court shall allow plaintiffs to pursue their claims occurring after February 1987. The Court finds that plaintiffs have kept defendants updated as to any claims occurring after the filing of their Second Amended Complaint and defendants will not be prejudiced by the inclusion of these claims at trial. This will not, however, make any individual plaintiff's claims recoverable pursuant to the doctrine of continuing violations for which that plaintiff has not alleged a supportable instance of discrimination within the original limitations period.

### IV. 42 U.S.C. § 1983

■ Defendant City argues that in count II plaintiffs fail to identify the existence of an official municipal policy of discrimination. Such an unconstitutional municipal policy must be proved for a municipality to be held liable pursuant to 42 U.S.C. § 1983. *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Therefore, argues defendant City, count II must be dismissed.

For purposes of § 1983, municipal policy may be made only by the official or officials responsible for establishing final policy with respect to the subject matter in question. Therefore, argues defendant City, liability cannot be based upon conduct of individuals who are not responsible for establishing final departmental policy.

■ In *Coogan v. City of Wixom*, 820 F.2d 170 (6th Cir.1987), the Sixth Circuit Court of Appeals identified the burden of proof that must be satisfied to impose § 1983 liability against a municipality. First, the plaintiff must identify a municipal policy. Second, the plaintiff must establish that the municipality is responsible for promulgating the policy. Third, the plaintiff must show that execution of the policy caused the injury of which the plaintiff has complained. 820 F.2d at 176. A plaintiff can establish the existence of a municipal policy or custom in two ways: (1) a decision-maker with final authority regarding the matter at hand issues an official proclamation, policy, or edict; or (2) a custom is established through a course of conduct when, though not authorized by law, such practices of municipal officials are so permanent and well settled as to virtually constitute law. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Defendant City claims that plaintiffs have failed to establish an official policy of discrimination on the basis of sex.

Plaintiffs' claim that defendant City has violated § 1983 by acquiescing in the FPD's longstanding practice of sex discrimination by failing to train FPD officers to refrain from discrimination on the basis of sex and by tacitly approving of the discrimination and

---

**14.** Claims of discriminatory conduct occurring after the filing of plaintiffs' response brief also may be raised as part of plaintiffs' case at trial, provided that plaintiffs have timely notified de-fendants of those claims. This is the case even with regard to those plaintiffs whose claims alleged herein have been dismissed.

harassment that allegedly occurs within the FPD. The existence of a governmental custom, its parameters, and whether a custom was practiced in an individual case are determinations left for the trier of fact—in this case, the jury. *Gregory v. City of Rogers, Ark.,* 921 F.2d 750, 757 (8th Cir.1990).

Plaintiff argues that municipal liability may be imposed either on the theory of "deficient training policy" or "condoned custom or usage." *Spell v. McDaniel,* 824 F.2d 1380 (4th Cir.1987), *cert. denied sub. nom City of Fayetteville v. Spell,* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). Actual or constructive knowledge of such a custom must be attributable to the governing body of the municipality or to an official with policy-making authority. *Bennett v. Slidell,* 735 F.2d 861 (5th Cir.1984). Moreover, "[a]n entity may be liable even for informal actions if they reflect a general policy, custom, or pattern of official conduct which even tacitly encourages conduct depriving citizens of their constitutionally protected rights." *Bohen v. City of East Chicago,* 799 F.2d 1180, 1189 (7th Cir.1986).

In *Bohen,* the City of East Chicago was found liable under § 1983 where

> [c]omplaints by the victims of sexual harassment were addressed superficially if at all, and the department had no policy against sexual harassment. In general, on-going and accepted practice at the East Chicago Fire Department, and high-ranking, supervisory, and management officials responsible for working conditions at the department knew of, tolerated, and participated in the harassment.

*Id.; see also Harris v. City of Pagedale,* 821 F.2d 499 (8th Cir.1987) (plaintiff proved municipal custom by establishing pattern of sexual misconduct by police officers; City officials in positions of authority and responsibility notified of offensive acts on repeated occasions, but officials repeatedly failed to take any remedial action). Plaintiffs claim that a custom is established in the present case because the FPD and City officials know "the general picture if not the details" of the pattern of discrimination and sexual harassment. Plaintiffs' response at 40–41. Plaintiffs allege that:

> Individual acts of harassment are engaged in by supervisory personnel, and complaints by the victims are addressed superficially, if at all. In short, high-ranking, supervisory and management officials responsible for working conditions at the FPD know of, tolerate and participate in the harassment. Police Chief Peek testified, "... not for one minute would I sit here and pretend that sexual harassment doesn't go on within the FPD, nor do I pretend for one moment that there is no ... discrimination of all sorts, within the police department."

*Id.*[15] This, argue plaintiffs, satisfies § 1983's policy or custom requirement. Defendant, to the contrary, replies that where there exists an official policy prohibiting sexual harassment and discrimination, as in this case, then the acts or omissions of municipal employees which are contrary to that policy can in no way constitute a custom or policy for purposes of § 1983 liability. *C.f. Bohen,* 799 F.2d at 1189 (fire department had no policy against sexual harassment).

■ The Court disagrees with defendant City's application of § 1983. In this case, plaintiffs allege that supervisory personnel were involved in the alleged discriminatory conduct, and that persons with policy-making authority in the FPD were aware of, and participated in, such conduct. Even with the existence of an anti-discrimination policy, where that policy is allowed to be ignored it may create a policy or custom contrary to that which was officially promulgated. The

---

**15.** Defendant City takes issue with plaintiffs' use of deposition transcripts to support their positions by quoting testimony out of context. After reviewing the relevant transcript testimony quoted by both plaintiffs and defendant City, the Court feels that such reliance upon the same testimony with different interpretations gives rise to a question of fact. Rather than rely upon transcripts to read testimony and attempt to determine what the deponent really was trying to say, the Court prefers to have those witnesses testify in person before the trier of fact. Therefore, although the Court is not convinced that Chief Peek's deposition testimony was an admission that sexual harassment runs rampant within the FPD, the Court will interpret his testimony, and that of other high-ranking officials, in the light most favorable to plaintiffs.

jury must determine whether persons with authority to make policy were aware of or took part in discriminatory conduct, as alleged by plaintiffs. If this is the case, even given an official policy, that policy may have been superseded by subsequent action of persons with policy-making authority. This would not expose defendant City to § 1983 liability based upon *respondeat superior*, but for a policy or custom as required by *Monell*.[16]

■ Plaintiffs also argue that defendant City should be held liable under § 1983 for a failure to train its male officers to refrain from sex discrimination and sexual harassment. The Supreme Court recently has reiterated that such a claim of inadequate training of police officers can state a cause of action under § 1983 if, and only if, the failure to train amounted to a *deliberate indifference* to the rights of those with whom the police come into contact. *Collins v. City of Harker Heights, Texas,* —— U.S. ——, ——, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). A showing of deliberate indifference may be established by "a pattern of inadequate training, supervision and discipline of police officers." *Parker v. District of Columbia,* 850 F.2d 708 (D.C.Cir.1988), *cert. denied* 489 U.S. 1065, 109 S.Ct. 1339, 103 L.Ed.2d 809 (1989). Finally, there must be a causal connection between the inadequate training and the risk of harm to others. *Id.*

■ The Supreme Court also has held that a § 1983 cause of action may not lie where a sound training program created by the municipality merely was administered negligently. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 391–92, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989). Thus, this case presents issues that must be determined by the jury before the Court can determine whether plaintiffs have established a § 1983 policy or custom for defendant City's failure to train. The issues to be determined by the

jury are: (1) whether defendant City's training program, supervision, and discipline are adequate to prevent sex discrimination and harassment by FPD personnel (or whether the existing policies merely were negligently administered); (2) did the deficiency in the training program cause the male officers' indifference to plaintiffs' civil rights to be free from sex discrimination; and (3) did plaintiffs suffer injury emanating from this indifference to plaintiffs' civil rights. *See Canton,* 489 U.S. at 390–92, 109 S.Ct. at 1205–06; *Parker,* 850 F.2d 708.

## V. *Plaintiffs' Sexual Harassment Claim*

■ The Elliott–Larsen Civil Rights Act prohibits sexual harassment. Within the Act, sexual harassment is defined as:

... unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature when:

(i) Submission to such conduct or communication is made a term or condition either explicitly or implicitly to obtain employment....

(ii) Submission to or rejection of such conduct or communication by an individual is used as a factor in decisions affecting such individual's employment....

(iii) Such conduct or communication has the purpose or effect of substantially interfering with an individual's employment ... or creating an intimidating, hostile, or offensive employment ... environment.

M.C.L. § 37.2103(h). Federal EEOC guidelines contain a virtually identical definition, which was adopted by the Supreme Court in *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

The Court of Appeals has set forth the elements of a *prima facie* case of "environmental" sexual harassment:

**16.** The Court notes that at least one high-ranking officer in the FPD testified at his deposition that he was unaware of any official, written policy. This is significant. If different persons have been vested with policy-making authority within the FPD and in the City administration, then it is possible that a policy or custom followed at the FPD may be in conflict with policy promulgated

by the City. In that case, the City probably is liable for policy made by its agents who were authorized, even if in conflict with other City policies. The Court will not make this determination on the record presently before it. Defendant City may renew this part of its motion after the relevant facts have been determined at trial.

(1) The employee belongs to a protected group;

(2) The employee was subjected to unwelcome sexual harassment, as defined in legislation. "Unwelcome" means that the employee did not solicit or incite it, but rather regarded the conduct as undesirable or offensive;

(3) The harassment complained of was based upon sex, i.e., but for her sex, she would not have been the object of harassment;

(4) The harassment unreasonably interfered with the plaintiff's work performance and created an intimidating, hostile, or offensive work environment that seriously affected a term, condition or privilege of employment, which includes her state of psychological well-being. Whether sexual harassment in the workplace is sufficiently severe and persistent to seriously affect an employee's psychological well-being is a question to be determined with regard to the totality of the circumstances and evaluated based upon the reasonable woman standard;

(5) *Respondeat superior*, i.e., she must show that the employer knew or should have known of the harassment in question and failed to take prompt remedial action. Knowledge can be determined by evidence of complaints or by evidence of pervasiveness.

*Risinger v. Ohio Bureau of Worker's Comp.*, 883 F.2d 475, 484 (6th Cir.1989); *Rabidue v. Osceola Ref. Co.*, 805 F.2d 611, 619–20 (6th Cir.1986); *Henson v. City of Dundee*, 682 F.2d 897, 903–05, 29 F.E.P. Cas. 787 (11th Cir.1982); *see also Yates v. AVCO Corp.*, 819 F.2d 630–36, 43 F.E.P. Cas. 1595 (6th Cir. 1987); *Radtke v. Everett*, 189 Mich.App. 346, 471 N.W.2d 660 (1991). The Court concludes from the record before the Court that plaintiffs have pleaded a *prima facie* case of sexual harassment.

As discussed previously, the Court declines to conclude at this time and upon the current record that plaintiffs' claims of sexual harassment are isolated, vague, and unsubstantiated and, therefore, insufficient to establish a *prima facie* case of sexual harassment. *See*

*Jackson–Colley*, 655 F.Supp. 122, 126 (E.D.Mich.1987). The Court would like to refrain from making this determination until after plaintiffs' proofs have been presented at trial. Defendant City may renew this part of its motion at that time, if appropriate.

## VI. *Plaintiffs' Sex Discrimination Claim*

Defendant City moves for summary judgment, arguing that plaintiffs cannot establish a *prima facie* case of sex discrimination. For § 1983 liability for discrimination, plaintiffs must establish intentional discrimination. *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Therefore, plaintiffs cannot prove discrimination under a disparate impact theory under § 1983. Aside from this one avenue of plaintiffs' complaint upon which defendant City's motion is GRANTED, with regard to plaintiffs' sex discrimination claims, defendant City's motion is DENIED.

The Elliott–Larsen Act provides for two theories upon which to base a claim of sex discrimination: (1) disparate treatment; and (2) disparate impact. Under a disparate treatment claim, a *prima facie* case involves proof that the plaintiff was treated differently than a man for engaging in the same or similar conduct. In other words, disparate treatment occurs when similarly situated persons are treated differently because of gender. Under a disparate impact theory, a *prima facie* case is made out with proof of facially neutral employment policies and practices which are applied even-handedly but result in a disproportionate effect upon women vis-a-vis men, thereby excluding women from employment opportunities. Plaintiffs have alleged enough facts to survive defendant City's summary judgment motion.

## VII. *Disposition*

Defendant City's motion is GRANTED IN PART and DENIED IN PART. Except for those claims which the Court specifically has indicated are barred from inclusion in this case, defendant City's motion for summary judgment is DENIED.

A Final Pretrial Conference shall be held on April 30, 1993 at 9:00 a.m. By April 26, 1993, the parties shall file with the Court a

**658**

Joint Final Pretrial Statement as required by the Court's Policies, a copy of which is provided herewith. Any further motions must be filed by April 16, 1993 and responses thereto must be filed by April 26, 1993.

SO ORDERED.